**PHOTO-SONICS, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 19921.**

United States Court of Appeals
Ninth Circuit.

Feb. 24, 1966.

F. Edward Little, Los Angeles, Cal., for petitioner.

Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Richard J. Heiman, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before BARNES, JERTBERG, and ELY, Circuit Judges.

ELY, Circuit Judge:

We face a petition for review of a Tax Court decision upholding the assessment of a deficiency in the payment of income taxes. The decision is reported at 42 T.C. 926 (1964). The petitioning taxpayer properly invokes our jurisdiction under sections 7482 and 7483 of the Internal Revenue Code of 1954.

The controversy stems from taxpayer's method of accounting for its inventory of goods which it manufactured. Under the method, generally described as "prime costing" or "prime cost", only the cost of direct labor and materials were allocated to inventory value. No portion of factory-overhead expense, variable or fixed, was included.

The key to validity of an accounting method is, in accounting terms, a matching of costs and revenues and, in terms of the taxing statute, a clear reflection of income. Int.Rev.Code of 1954, §§ 446, 471. The Government urges that, just as labor and materials cannot be expensed in the year in which such expenses are incurred without giving due regard to whether the manufactured product remains on hand, factory-overhead expenses which constitute a portion of the cost of unsold manufactured products cannot be expensed as they are incurred but rather should be allocated to the manufactured products and deducted, as a cost of sale, when the goods are sold. It contends that proper allocation of factory-overhead expenses, both fixed and variable, to the inventory is the only manner by which the taxpayer's income for a given period may be clearly reflected.

It may be that "direct costing", the allocation to inventory of labor, materials, and variable factory overhead, is an accurate method by which to account for inventory. If consistently applied, it would not seem to be less satisfactory than the method advanced by the Government, i.e., the "absorption costing" method under which labor, material, and both fixed and variable factory overhead are allocated. Both methods are accepted, although "absorption costing" seems now to be preferred by most American accountants.[1] The Tax Court arrived at its determination "without attempting to lay down any broad principles applicable to inventories." 42 T.C. at 936. We, exercising similar restraint, are concerned with a particular accounting method only as it relates to the particular facts which are before us.

Here, the taxpayer allocated no portion of its factory-overhead expense to inventory.[2] The regulations clearly specify that such be done. Treas.Reg. § 1.471–3(c) (1964). A method which excludes all factory-overhead costs is not an acceptable accounting practice. See American Institute of Certified Public Accountants, Accounting Research Bull. No. 43. The significance of failure to allocate any of such costs to inventory is emphasized by looking in this case, as an example, to one of the items of unallocated factory overhead, shop and tool expense. This expense represented items purchased during the year which were either too inexpensive to depreciate or were consumed during the year. The Tax Court found that it amounted to $8,215.34 in 1958, $40,397.22 in 1959, and $103,896.-18 in 1960. Thus, in an expanding business in which some of the products manufactured in one fiscal period are sold in a subsequent fiscal period, the expenses which are attributable to the cost of sales in a subsequent year are matched against the lower sales revenues of a prior year. The effect of such a practice, if allowed, would obviously permit taxpayer to report less income than the amount which was truly earned. It would not be an "accounting practice * * * clearly reflecting the income" as required by section 471.

In reviewing the proceedings below, it is seen that certain testimony of accountants produced by the taxpayer cast doubt upon the validity of taxpayer's accounting method. One such witness admitted, in the Government's cross examination, that an opinion given by a Certified Public Accountant as to the accuracy of financial statements prepared by taxpayer's method would require qualification if factory-overhead expense were material; otherwise, an examiner of the financial statement would be misled.[3] It cannot be denied that, here, factory-overhead expense was significantly material.

1. The statute and regulations should not be interpreted so as to permit the taxing authority arbitrarily to impose its own preferred system of accounting upon taxpayers. If a taxpayer employs a method which is acceptable under accounting standards, even though some might say that it does not conform "as nearly as may be to the best accounting practice" (Int.Rev.Code of 1954, § 471), the taxpayer's choice of method should not be disturbed if it clearly reflects income. This is particularly so when a taxpayer has consistently applied his method, without the Commissioner's challenge, for a reasonable period of time.

2. Taxpayer emphasizes the alleged consistency of its method of accounting for inventory of manufactured goods. Application of a consistent method is necessary (Treas.Reg. § 1.471–2(b) (1964)), but consistency alone cannot satisfy the requirement that there be a clear reflection of income. Furthermore, in view of the fact, stipulated by the parties, that the taxpayer's report of closing finished goods inventories for the fiscal years 1955, 1956, 1957, and 1958 did not even include direct allocation of labor costs to the inventories, it is questionable that its method had been consistently applied.

3. One of taxpayer's witnesses was a bank loan officer and another was a management consultant who was also a Certified Public Accountant. Both expressed preference for a method such as that employed by taxpayer because, to them, it presented a truer indication of current financial condition.

■ We are not persuaded that the Commissioner's determination was arbitrary. It follows that the Tax Court's decision, not clearly erroneous, must be Affirmed.