ALL-STEEL EQUIPMENT INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2805–66.    Filed September 30, 1970.

*Arthur E. Bryan, Jr., Don S. Harnack,* and *James M. Roche,* for the petitioner.

*Nelson E. Shafer,* for the respondent.

## OPINION

Gross income, in a merchandising or manufacturing business, means total sales less cost of goods sold. Sec. 1.61–3(a), Income Tax Regs. The cost of goods sold during a year is determined by subtracting the cost of inventory on hand at the end of the year from the total of the cost of inventory on hand at the beginning of the year and the cost incurred during the year in acquiring new inventory.[1] Schedule A, Form 1120. The cost of inventory on hand at the end of a year becomes the cost of opening inventory for the next succeeding year. Thus, if an expense is properly allocable to the costs of acquiring the inventory on hand at the end of the year, it is not deductible in the year it is incurred; in effect, the expense is deferred until the year in which such inventory is sold. On the other hand, if the expense is not considered part of inventory cost, it ordinarily is currently deductible in accordance with the general method of accounting of the taxpayer. In this case, we have an interesting question of whether certain overhead expenses are currently deductible or whether such expenses should be allocated to inventories and deferred until a later year.

The initial question to be decided is whether any change should be made in the petitioner's method of valuing its inventory. The respondent contends that, since the petitioner's method of valuing inventory, which included only the cost of direct labor and materials, was not in accordance with either generally accepted accounting principles or applicable Income Tax Regulations, the use of such method did not clearly reflect income, and therefore, he is authorized to require the use of a different method. On the other hand, the petitioner's position is that, irrespective of whether its method of valuing inventory conforms, in the abstract, to the general principles of accounting

---

[1] Inventory may be valued at either cost or the lesser of cost or market. Sec. 1.471–2(c), Income Tax Regs. No issue has been raised with respect to the latter method of inventory valuation, and for the sake of simplicity, we assume that the value of the inventories in this case is based upon the costs thereof.

and to the Income Tax Regulations, such method has been consistently used, has not resulted in any material errors, and therefore clearly reflected income for the years 1962 and 1963. Accordingly, the petitioner contends that under section 446 of the Internal Revenue Code of 1954,[2] the respondent was not authorized to change its method of accounting. See *Glenn* v. *Kentucky Color & Chemical Co.*, 186 F. 2d 975 (C.A. 6, 1951); *Fort Howard Paper Co.*, 49 T.C. 275 (1967); *Sam W. Emerson Co.*, 37 T.C. 1063 (1962).

Section 446(a) and (b) provides:

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

Section 471 provides:

Whenever in the opinion of the Secretary or his delegate the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary or his delegate may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

First, it is quite clear that the petitioner's method of valuing its inventory, the prime cost method, does not, in the abstract, clearly reflect income.

Prime costing is not considered a generally accepted accounting principle for purposes of commercial accounting. Although we heard some testimony that prime costing was an acceptable method of accounting for the cost of inventory at the time the petitioner commenced to use such method, the first official pronouncement on the question by the American Institute of Certified Public Accountants was published in 1947 and is now contained in Accounting Research Bull. No. 43 (1961). In part, it provides: "It should * * * be recognized that the exclusion of all overheads from inventory costs does not constitute an accepted accounting procedure." A.R.B. No. 43, p. 29. This provision of A.R.B. No. 43 was reexamined by the AICPA in 1964 and 1965 and was not modified in any way. AICPA, Opinions of the Accounting Principles Board 6 (1965). A principal purpose of the A.R.B.'s was to encourage some degree of uniformity in accounting practices, and they constitute the most authoritative statement of generally accepted accounting principles. A.R.B. No. 43, p. 8. Additionally, other accounting authorities appear to agree that

---

[2] All statutory references are to the Internal Revenue Code of 1954.

prime costing is not a proper method of valuing inventories. American Accounting Association, Accounting and Reporting Standards for Corporate Financial Statements, 1957 Revision; Finney & Miller, Principles of Accounting, Intermediate, 227 (5th ed. 1958).

Moreover, the use of the prime cost method is contrary to the Income Tax Regulations. Section 1.471–3(c) provides:

Cost means:

    \*       \*       \*       \*       \*       \*       \*

(c) In the case of merchandise produced by the taxpayer since the beginning of the taxable year, (1) the cost of raw materials and supplies entering into or consumed in connection with the product, (2) expenditures for direct labor, (3) indirect expenses incident to and necessary for the production of the particular article, including in such indirect expenses a reasonable proportion of management expenses, but not including any cost of selling or return on capital, whether by way of interest or profit.

Similar provisions have been included in the regulations since 1918. Regs. 45, art. 1583 (2); *Photo-Sonics, Inc.*, 42 T.C. 926, 934 (1964), affd. 357 F. 2d 656 (C.A. 9, 1966). Although the regulations are not definite as to which indirect manufacturing expenses must be included in the costs of inventories, they state unequivocally that some portion of such expenses must be allocated to inventories.

When the question of the use of the prime cost method has come before the courts, its use has been disapproved. *Photo-Sonics, Inc.* v. *Commissioner*, 357 F. 2d 656 (C.A. 9, 1966), affirming 42 T.C. 926 (1964); *Dearborn Gage Co.*, 48 T.C. 190 (1967); *Frank G. Wikstrom & Sons, Inc.*, 20 T.C. 359 (1953). See also *Fort Howard Paper Co.*, *supra*. Thus, in the light of the unequivocal position of the AICPA, the regulations, and the court precedents, prime costing, in the abstract, must be recognized as an erroneous method for valuing inventories.

Next, we turn to the argument on which the petitioner relies heavily. It argues that as a practical matter, the prime cost method clearly reflects its income since it has consistently used such method over many years and its taxable income computed under such method does not materially differ from its taxable income resulting from the use of the method proposed by the respondent. In support of such argument, the petitioner has produced certain accountants' reports and has called expert witnesses whose professional stature is impressive and who testified that under the circumstances of this case the petitioner's method would clearly reflect its income for purposes of commercial accounting. In addition, the petitioner argues that its position is supported by the Income Tax Regulations and the legal precedents. The case has been thoroughly and exceptionally well prepared, but after considerable deliberation, we have concluded that the petitioner's position is unacceptable.

The petitioner relies on the fact that since 1933, it has been audited yearly by independent public accounting firms. So far as we can tell, none of the reports resulting from such audits has taken serious exception to the petitioner's method of costing inventories. Most of the reports state unqualifiedly that the financial statements of the petitioner fairly reflect its financial condition and the results of its operations, in conformity with generally accepted accounting principles. Some of the reports, which state the same general conclusion, specifically note the conservative method by which the petitioner valued inventory, but state that such valuation did not materially affect income. Other reports indicate that the petitioner's method of valuing inventory was not in accordance with generally accepted accounting principles. However, such reports do not specifically disapprove the petitioner's valuation method and we have concluded that the accountants believed that even though the petitioner departed from generally accepted accounting principles, such departure did not prevent the petitioner's financial statement from fairly reflecting the results of operations. All of the reports available to us for examination disclose in some way that the petitioner included only direct labor and materials in inventory cost.

In addition to the accountants' reports, the petitioner's expert witnesses testified that its method of accounting clearly reflected income. None of these witnesses, however, stated that prime costing was a generally accepted accounting procedure. Rather, their testimony was posited on the belief that no material distortion of income resulted from prime costing in the facts of this case. With respect to the matter of materiality, the petitioner has provided us with a table, reproduced below, showing the effect on its net income for the years 1954 through 1967 by applying the method of inventory valuation used by the respondent in his determination.

| Calendar year | Respondent's proposed method of costing inventory | | Effect on income of All-Steel | Form 1120 taxable income as reported by All-Steel | Percent change |
| --- | --- | --- | --- | --- | --- |
| | Opening | Closing | | | |
| 1954 | $167,197.42 | $223,862.64 | $56,665.22 | $1,507,363.54 | 3.76 |
| 1955 | 223,862.64 | 193,090.95 | (30,771.69) | 2,735,777.69 | (1.12) |
| 1956 | 193,090.95 | 210,950.43 | 17,859.48 | 4,226,135.06 | 0.42 |
| 1957 | 210,950.43 | 344,673.07 | 133,722.64 | 2,913,885.57 | 4.59 |
| 1958 | 344,673.07 | 441,315.13 | 96,642.06 | 2,444,283.63 | 3.95 |
| 1959 | 441,315.13 | 320,110.96 | (121,204.17) | 4,088,541.88 | (2.96) |
| 1960 | 320,110.96 | 487,442.26 | 167,331.30 | 3,277,497.54 | 5.11 |
| 1961 | 487,442.26 | 522,859.20 | 35,416.94 | 3,008,140.68 | 1.18 |
| 1962 | 522,859.20 | 493,611.83 | (29,247.37) | 3,348,839.72 | (0.87) |
| 1963 | 493,611.83 | 604,450.78 | 110,838.95 | 3,358,663.52 | 3.30 |
| 1964 | 604,450.78 | 501,171.18 | (103,279.60) | 3,917,807.82 | (2.64) |
| 1965 | 501,171.18 | 508,000.13 | 6,828.95 | 5,634,029.10 | 0.12 |
| 1966 | 508,000.13 | 715,558.41 | 207,558.28 | 5,222,067.05 | 3.97 |
| 1967 | 715,558.41 | 863,537.67 | 147,979.26 | 3,472,962.19 | 0.43 |

The evidence suggests that, insofar as commercial accounting standards are concerned, an item which distorts net income by less than 5 percent is not material. According to the AICPA, such an item need not be treated in accordance with generally accepted accounting principles:

9. The committee [Committee on Accounting Procedure of the AICPA] contemplates that its opinions will have application only to items material and significant in the relative circumstances. It considers that items of little or no consequence may be dealt with as expediency may suggest. * * * [A.R.B. No. 43, p. 9]

Although we accept the fact that the petitioner's method of accounting fairly reflected the results of its operations for commercial accounting purposes, we do not think its departure from applicable generally accepted accounting principles and tax regulations can be justified for tax purposes on the argument that the errors were not material. Since it is clear that prime costing is not a generally accepted accounting procedure, the opinions of public accountants adduced in favor of the petitioner's position must rest on the accounting doctrine of materiality. Such doctrine finds broad application in commercial accounting, but we do not think it may appropriately be extended to the law of taxation in cases in which the taxpayer's method of accounting is clearly erroneous.

It has been stated that the primary function of commercial accounting is "the extraction and presentation of the essence of the financial experience of businesses, so that decisions affecting the present and the future may be taken in light of the past." May, Financial Accounting vii (1943). As opposed to this rather broad function of commercial accounting, the purpose of tax accounting is limited to providing an income figure on which to compute tax. An error in the treatment of an item for commercial accounting purposes will probably be harmless if the general statement of financial condition is substantially correct. However, any error in the treatment of an item which changes taxable income will cause a corresponding error in tax computation. For tax purposes, there is no rule excusing a taxpayer from paying deficiencies which are relatively immaterial. Moreover, the doctrine of materiality in commercial accounting does not have the same significance it would have if applied to tax controversies. Accounting Research Bulletin No. 43 states at page 23 that:

It is important that the amounts at which current assets are stated be supplemented by information which reveals, * * * for the various classifications of inventory items, the basis upon which their amounts are stated and, where practicable, indication of the method of determining the cost—e.g., *average cost, first-in first-out, last-in first-out*, etc.

Thus, in this case, each accountant's report of the petitioner which has been introduced in evidence recites at some point, in some manner, that only the costs of direct labor and materials are reflected in inventory. Such disclosure, for commercial accounting purposes, minimizes any harm that may be done by incorrectly computing the cost of inventory. See also AICPA, Opinions of the Accounting Principles Board 6, app. A (1965). However, for tax purposes, such disclosure has no ameliorative effect since taxes will still be computed on an incorrect computation of income. Accordingly, we have concluded that the application of the materiality doctrine is inappropriate in this case, even though such doctrine might lead a public accountant to believe that the petitioner's method of accounting clearly reflected income. We wish to stress the point that our conclusion with respect to materiality is limited to cases in which the method of accounting in issue complies with neither applicable tax regulations nor generally accepted accounting procedures; we express no view on other situations.

The petitioner next argues that the factors of consistency and materiality have been given significance in tax regulations and case law, and that such regulations and law require us to find that its method of accounting did clearly reflect income. The petitioner points out that it has used prime costing since at least 1928; that although it has been regularly audited by the respondent, no deficiencies have been asserted with respect to its method of costing inventories until the years in issue; and that the divergence between its net income as reported for the years 1953 through 1967 and the income it would have reported under the respondent's method of accounting is for all years except 1960 less than 5 percent. Conceding all these facts, we do not believe that the regulations and the cases relied on by the petitioner support its position.

Section 1.471-2(b), Income Tax Regs., states:

(b) It follows, therefore, that inventory rules cannot be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business. In order clearly to reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation *so long as the method or basis used is substantially in accord with §§ 1.471-1 through 1.471-9. * * ** [Emphasis supplied.]

Frequently, there are several acceptable methods of accounting for an item of income or expense. The regulations make clear that the accounting practice once adopted should be followed consistently, but the italicized portion of the regulations also makes clear that the significance of consistent use is limited to the situation in which the method chosen is acceptable. This interpretation of the

regulations is also consistent with decided cases. In *Fort Howard Paper Co., supra*, the Court approved of the taxpayer's method of accounting for the expenses of self-constructed assets in which it did not include any portion of manufacturing overhead. However, the Court emphasized that such method was an acceptable method of treating such expenses and was not inconsistent with any regulation. The Court distinguished *Photo-Sonics, Inc., supra*, and *Dearborn Gage Co., supra*, in which it was held that the consistent use of an erroneous method did not justify its continued use. See also *Sam W. Emerson Co., supra; Geometric Stamping Co.*, 26 T.C. 301 (1956). We have found no case in which consistency caused the Court to conclude that an erroneous method of accounting should be approved as clearly reflecting income.

Nor is the petitioner on any firmer ground with respect to its argument on materiality. First, it should be recognized that the amounts in dispute are substantial, even though they constitute only a small percentage of the petitioner's income. The parties agree that if the petitioner's method of accounting is changed, section 481 is applicable; consequently, although only the taxable years 1962 and 1963 are in issue, the adjustment for 1962 in effect picks up the income not reported for the years subsequent to 1953 due to the use of an improper method of accounting. The respondent's adjustment for 1962 was $327,440.55, and although that amount will have to be recomputed as a result of our decision, it illustrates the significance of the amount in dispute.

Moreover, the objective of the method of valuing inventories is to assign to such inventories the cost of their production; thus, in a later year when the inventories are sold, the income resulting therefrom may be offset by the costs of producing such goods. The use of an improper method for valuing inventories involves the risk of distorting income by failing to offset against the income from the sale of the inventories the expenses properly attributable thereto. For a year in which the inventory expands, the use of the prime cost method results in an understatement of income; whereas, its use causes an overstatement of income when there is a decrease in the inventory. For example, according to the table presented by the petitioner, the use of the prime cost method caused an understatement of income for 10 of the 14 years and an overstatement of income in only 4 of the years. That table also shows that, even though the prime cost method was used consistently, the errors resulting from its use were not eliminated. What is more, the continued use of an erroneous method involves the risk that it will produce a much greater error in a later year, especially if the petitioner's business should increase significantly.

We have already stated our reasons for concluding that the accountants' attitude toward mistakes considered immaterial by them is not acceptable for tax purposes. Furthermore, there is no legal basis for permitting the petitioner to continue to use an erroneous method merely because of the smallness of the amounts of income not reported in the years before us; and there is surely no basis for holding that the petitioner may continue to use such method until a year in which it does result in the underreporting of larger amounts of income. None of the cases cited by the petitioner convinces us of error in this judgment. *Glenn* v. *Kentucky Color & Chemical Co.*, *supra*; *Broida, Stone & Thomas, Inc.* v. *United States*, 204 F. Supp. 841 (N.D. W. Va. 1962), affirmed per curiam 309 F. 2d 486 (C.A. 4, 1962); *Michael Drazen*, 34 T.C. 1070 (1960); *National Builders, Inc.*, 12 T.C. 852 (1949). At most, such cases indicate that materiality will be considered a factor in situations involving permissible alternative methods.

Since we have found that the petitioner's method of accounting did not clearly reflect its income, we reach the question of what adjustments to the petitioner's accounting method should be made. The petitioner takes the position that if its method of costing inventory is found not to clearly reflect income, we should not impose the adjustments sought by the respondent, but rather should make an independent determination as to the method of costing inventory "conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income." Sec. 471. The petitioner recognizes that it has a heavy burden of proof in matters involving the respondent's judgment as to accounting methods, but it contends that errors in the respondent's determination, and expert testimony introduced at the trial, indicate that the determination was erroneous and that we should fashion a method of accounting for inventory consistent with the evidence before us.

First, the petitioner points out that the respondent now concedes some errors in his determination. In determining the deficiency, the respondent included in the cost of inventory virtually all of the accounts contained in the petitioner's manufacturing ledger. In this manner, it was the respondent's intention to effectuate what may be referred to as the full absorption method of costing. Full absorption costing is the most expansive method of valuing inventories. As expressed by expert witnesses for the petitioner and the respondent, such method includes in inventory all costs incurred by a business by reason of the fact that it is a manufacturing business. However, as the petitioner points out, and as the respondent on brief agrees, certain items included in inventory for purposes of the deficiency determination are not properly includable in inventory even under full absorption

costing. These errors appear to result from the respondent's initial view that all items in the petitioner's manufacturing ledger related to its manufacturing operations. The respondent now concedes that such is not the case, and proposes to eliminate from inventory all items in the manufacturing ledger which his expert witness stated to be not includable under full absorption costing. In addition, the respondent has determined, apparently for administrative reasons, that he does not desire at this time to have the Court consider the includability in inventory of profit-sharing plan contributions; and accordingly, he has conceded the deductibility of this item.

Secondly, the petitioner contends that the respondent also erred in his determination by requiring the inclusion of certain costs in inventory even though the current deductibility of such costs is expressly authorized by the Code and regulations. The expenditures referred to by the petitioner involve costs incurred for repairs, taxes, losses, and research and experiment. We agree with the petitioner that such expenditures are currently deductible and are excludable from inventory costs.

Deductions for taxes, losses, and research and experiment are expressly authorized in the year the taxes are paid or accrued, the losses are sustained, or the research and experimental expenditures are paid or incurred. Secs. 164, 165, 174. Neither the statutory provisions nor the regulations indicate in any way that such deductions are limited to current expenses as distinguished from capital expenditures for the acquisition of capital assets or inventory. To the contrary, it has been held that deductions expressly granted by statute are not to be deferred even though they relate to inventory or capital items. *Montreal Mining Co.*, 2 T.C. 688 (1943); *Spring Valley Water Co.*, 5 B.T.A. 660 (1926); *Pacific Coast Redwood Co.*, 5 B.T.A. 423 (1926). See also *Joe W. Stout*, 31 T.C. 1199 (1959), affirmed and modified on other issues sub nom. *Rogers* v. *Commissioner*, 281 F. 2d 233 (C.A. 4, 1960). Cf. sec. 266; Rev. Rul. 141, 1953-2 C.B. 101. Moreover, section 174 expressly states that research and experimental expenditures may be treated "as expenses which are not chargeable to capital account." Although *Frank G. Wikstrom & Sons, Inc.*, 20 T.C. 359 (1953), held that taxes were not currently deductible but must be included in the costs of inventory, it appears that the issue was not fully presented to and considered by the Court, and accordingly, in the light of the other precedents, we do not consider that case to be controlling.

The treatment of expenditures for repairs presents a somewhat different question since there is no statutory provision expressly allowing their deduction. Whether such expenditures are currently deductible or must be capitalized depends upon whether they are ordi-

nary and necessary expenses deductible under section 162, whether they are capital expenditures expressly made nondeductible by section 263, or whether they are part of the costs of production of goods to be taken into consideration in computing gross income under section 61. Section 1.162–4, Income Tax Regs., provides:

Sec. 1.162–4. Repairs

The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense, provided the cost of acquisition or production or the gain or loss basis of the taxpayer's plant, equipment, or other property, as the case may be, is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall either be capitalized and depreciated in accordance with section 167 or charged against the depreciation reserve if such an account is kept.

By this provision, the regulations take the position that incidental repairs may be treated as ordinary and necessary expenses deductible under section 162; they need not be capitalized. It therefore seems appropriate to conclude that they need not be treated as part of the costs of acquiring an inventory.

The petitioner's final attack upon the determination is based upon expert testimony to the effect that the respondent's method of costing inventory was not in accordance with the regulations and sound accounting practices. Under section 471, the Income Tax Regulations provide that the method of valuing an inventory shall "conform as nearly as may be to the best accounting practice in the trade or business." Sec. 1.471–2(a)(1). The petitioner called three expert witnesses to testify as to what method of valuing inventory would, in their opinion, constitute the best accounting practice for the petitioner. Although these witnesses were not completely unanimous in their treatment of each item of inventory cost, they all excluded most of the indirect expenses included by the respondent in his determination. The petitioner argues that since the question calls for the opinion of accountants, its expert testimony must be given substantial weight. On the other hand, the petitioner points out that although the single expert called on to testify by the respondent expressed his general preference for the full absorption method of costing, at no time was he asked, nor did he testify, as to whether such method was best for this taxpayer in its trade or business.

Although the respondent has admitted that he made some mistakes in the determination, and although we have found that additional items should not have been treated as part of the costs of the inventories, we do not agree that we should disregard the method of accounting proposed by the respondent.

The wording of sections 446(b) and 471 makes clear that, in matters of accounting methods, the respondent is invested with broad discretion. If a taxpayer's method of accounting does not clearly reflect income, the respondent may compute income "under such method as, in * * * [his] opinion * * *, does clearly reflect income." Sec. 446(b). More specifically, section 471 provides that "inventories shall be taken * * * on such basis *as the Secretary or his delegate may prescribe* as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income." (Emphasis supplied.) These provisions have been a part of our tax law for many years, and they have been interpreted as imposing an extremely heavy burden of proof on taxpayers challenging the respondent's determinations—the Supreme Court has gone so far as to require a showing that such determinations are "plainly arbitrary." *Lucas* v. *Structural Steel Co.*, 281 U.S. 264 (1930). See also *Photo-Sonics, Inc.* v. *Commissioner, supra; Finance & Guaranty Co.* v. *Commissioner*, 50 F. 2d 1061 (C.A. 4, 1931), affirming 19 B.T.A. 1313 (1930); *Commissioner* v. *Joseph E. Seagram & Sons, Inc.*, 394 F. 2d 738 (C.A. 2, 1968), reversing 46 T.C. 698 (1966). Thus, it appears to be a longstanding and well-established policy of our tax system that since we have found the petitioner's method of accounting does not clearly reflect income, we should accept the method proposed by the respondent, unless it is shown that such method is arbitrary—we are not to fashion a different method merely because it may appeal to our sense of equity.

The petitioner's expert witnesses testified that in their opinion the best method of accounting for the petitioner's business would result from excluding from inventory certain specified items included by the respondent, in addition to the erroneous items. In fact, by excluding such additional items, the petitioner would include in inventory only very few items which were not included under its prime costing method. The testimony convinces us that there is a wide range of permissible variations in the method of inventory costing, and the selection of an individual method is largely a matter of judgment by the involved accountant. Although the petitioner's experts gave their views in response to the question of which method of inventory costing would be best for the petitioner in light of the facts of this case, the experts did not point out any specific facts about the petitioner's business which led them to conclude that a method of costing, more conservative than the full absorption method, would be generally regarded by accountants as the most appropriate method for the petitioner. After reviewing their testimony, it appears that they were merely expressing their general preference for more conservative

methods. Such testimony falls far short of showing that the application of the full absorption method to the petitioner's business is arbitrary or unreasonable.

The full absorption method has been accepted by the AICPA, and the respondent's expert stated it to be his preferred method. One of the petitioner's experts confirmed the fact that the absorption method was clearly a generally accepted accounting practice, and even went so far as to state that the more conservative method of costing favored by him was not as clearly generally accepted. We have concluded that the expert accounting testimony is not sufficient to carry the petitioner's heavy burden of proving that the respondent's determination is incorrect because of the use of the absorption method.

Nor do we think the respondent's inclusion in the petitioner's inventory of the erroneous items is grounds for disregarding his determination and for constructing a whole new method of inventory costing. We can clearly discern the general approach adopted by the respondent in computing the petitioner's opening and closing inventory, and we have found that approach, the full absorption method, to be in accordance with law. Therefore, we do not think the inclusion of the erroneous items renders the respondent's general approach arbitrary. Cf. *Foster* v. *Commissioner*, 391 F. 2d 727 (C.A. 4, 1968), modifying a Memorandum Opinion of this Court; *M. Pauline Casey*, 38 T.C. 357 (1962). The erroneous items can be discerned with relative clarity and can therefore be omitted from inventory valuation in the Rule 50 computation.

Though the petitioner has produced impressive expert testimony, we have concluded that under the law, we must accept the respondent's method, subject to some modifications. Courts in the past have expressed their reluctance to formulate methods of accounting. *Brown* v. *Helvering*, 291 U.S. 193 (1934); *Harden* v. *Commissioner*, 223 F. 2d 418 (C.A. 10, 1955), reversing 21 T.C. 781 (1954); *Fort Pitt Brewing Co.* v. *Commissioner*, 210 F. 2d 6 (C.A. 3, 1954), affirming 20 T.C. 1 (1953), certiorari denied 347 U.S. 989 (1954). As we have seen, there is a broad range of permissible alternative methods and expert accountants frequently disagree as to which method is most appropriate in a given situation. If distinguished members of the accounting profession cannot agree on the best method of accounting in a given situation, courts should not undertake to make such a choice except in the most obvious cases. In the instant case, it is clear that the method of costing inventories employed by the petitioner is unacceptable; it is also clear that the general method adopted by the respondent is, if not a favored approach, at least one which is generally accepted.

In these circumstances, both the words of the statute and the prior cases direct us to accept the method proposed by the respondent.

The petitioner also argues that in his determination, the respondent has incorrectly interpreted and applied the provision of the regulations which requires inventory costs to include "indirect expenses incident to and necessary for * * * production." Sec. 1.471–3(c), Income Tax Regs. The petitioner's experts were of the opinion that the "incidental" test requires the exclusion from inventory costs of those expenditures which do not vary as a result of variations in production. Such an interpretation of the regulations would effect a method of costing sometimes known as direct costing. Although the use of such a method may be permitted under certain circumstances (cf. *Geometric Stamping Co.*, 26 T.C. 301 (1956)), such interpretation is not required by the words of the regulations. Obviously, expenditures which are necessary for the production of inventory need not vary with the quantity of inventory produced. For example, the quality control account, one of the overhead items included in inventory by the respondent, has been identified as a fixed cost which does not vary with production; yet, it is clear that such expenditures are necessary to the manufacturing operation. Similarly, we do not think that expenditures "incident" to production excludes fixed costs. "Incident" is defined by Webster's Third New International Dictionary as "occurring or likely to occur esp. as a minor consequence or accompaniment * * * dependent on or appertaining to another thing." Surely such a definition does not imply an occurrence which necessarily varies in accordance with another occurrence. Furthermore, the effect of adopting the petitioner's position would be to foreclose the use of absorption costing in inventory valuation. However, such a method of costing has already been judicially approved; nothing convinces us that we should ignore such prior adjudication. *Photo-Sonics, Inc.*, *supra*.

The question now becomes which of the items included in the petitioner's inventory by the respondent's determination should be excluded from inventory cost in the Rule 50 computation. We have already concluded that items representing repairs, taxes, losses, and research expenditures are currently deductible and should be excluded from inventory cost.

In addition to these accounts, it is clear that certain other accounts are not, under any proper interpretation of absorption costing, includable in inventory. Both the expert witness called by the respondent and one of the experts called by the petitioner enumerated several of such accounts. However, the petitioner's expert was of the opinion that several of the accounts included in inventory by the respondent's

expert should be excluded. We have already stated our views with respect to the burden of proof in cases involving disputes over accounting methods. Accounting procedures are frequently a matter of judgment, and when, as in this case, the petitioner's method of accounting does not clearly reflect income, we will accept the respondent's proposed alternative unless it is demonstrably incorrect. The respondent's witness testified that the includability of an item in inventory under full absorption costing depends on whether such item was incurred because the business was a manufacturing business rather than a merchandising one. The petitioner's expert basically agreed with this test, even though he disagreed, to some extent, in applying such test. We have reviewed the disputed items and, based on the testimony and argument in this case, we cannot conclude that the judgment of the respondent's expert was unreasonable.

To avoid uncertainty in the Rule 50 computation, we will enumerate those items which are excludable from inventory either because they are expressly made currently deductible or because they are not manufacturing expenses. As we indicate, some of the items should only be partially excluded from inventory. In some instances, the parties will be required to make an allocation on the basis of the petitioner's books and records; in other instances, we have estimated the proper allocation rate. *Cohan* v. *Commissioner*, 39 F. 2d 540 (C.A. 2, 1930). If no allocation is indicated, the entire account is to be excluded from inventory.

Account 5101—General Superintendent (exclude 10 percent, based on portion of time devoted to sales matter)

Account 5101—Paint General Foreman (exclude 10 percent based on portion of time devoted to research and experiment)

Account 5111—Maintenance Foremen (exclude 20 percent, based on portion of time devoted to maintenance of nonplant areas)

Account 5111—Receiving Foreman (exclude 25 percent, based on portion of time devoted to receiving nonmanufacturing materials)

Account 5111—Assistant Receiving Foreman

Account 5111—Janitor Foremen (exclude portion not attributable to plant areas—allocate on basis of proportion of plant areas to nonplant areas)

Account 5121—Production Planning (exclude portion of expenditures devoted to planning as opposed to scheduling functions)

Account 5121—Paint Processing (exclude 50 percent, based on portion of time devoted to research and experiment)

Account 5121—Superintendent's Office (exclude 15 percent of nurses' salaries, based on portion of time devoted to office employees)

Account 5121—Plant Engineering (exclude 80 percent, based on time devoted to nonplant activities)

Account 5121—Shipping Expediting

Account 5121—Stock and Storage (exclude 25 percent, based on time devoted to office supplies)

Account 5131—Overtime Premium (exclude portion attributable to excludable basic compensation of Account 5121 employees)

Account 5141—Administrative (exclude 50 percent, based on portion of time devoted to nonproduction matters)

Account 5141—Miscellaneous (exclude in same proportion as Account 5501)

Account 5151—Receiving (exclude 20 percent, based on time attributable to nonproduction material)

Account 5151—Try Out New Dies

Account 5151—Janitor Work Factory (exclude portion attributable to maintenance of nonplant facilities—allocate on basis of proportion of plant areas to nonplant areas)

Account 5161—Time Clerks (exclude portion allocable to processing time cards of shipping and warehouse personnel—allocate on basis of proportion of number of such personnel to number of personnel whose salary is included in inventory)

Account 5171—Rework Labor

Account 5181—Spoiled Material

Account 5301—Die Grinding and Repairs—Material and Outside Services

Account 5311—Die Grinding and Repairs—Labor

Account 5321—Repairs to Buildings, Roads, and Grounds—Materials and Outside Service

Account 5331—Repairs to Buildings, Roads, and Grounds

Account 5341—Repairs to Machinery and Equipment—Materials and Outside Services

Account 5351—Repairs to Machinery and Equipment—Labor

Account 5361—Automobiles and Trucks (exclude 50 percent, based on use for mail and light deliveries)

Account 5401—Casualty Insurance (exclude portion attributable to finished goods inventory—allocate on basis of proportion of cost of finished goods inventory to costs of raw materials, work in process, and plant facilities)

Account 5421—Property Taxes

Account 5501—Workmen's Compensation and Liability Insurance (exclude in same proportion as covered employee's basic compensation is excluded from inventory)

Account 5511—Payroll Taxes (exclude State and local taxes only)

Account 5541—Profit Sharing

Account 5551—Group Insurance (exclude in same proportion as covered employee's basic compensation is excluded from inventory)

Account 5731—Rubbish Removal (exclude 40 percent, based on portion of expense attributable to nonplant facilities)

Account 5741—Water (exclude 20 percent, based on portion of expense not attributable to plant operation)

Account 5751—Watchmen Service (exclude 20 percent, based on portion of expense not attributable to plant facilities)

Account 5761—Janitorial Service (exclude on same basis as Account 5151—Janitor Work Factory)

Account 5771—Interplant Trucking (exclude 75 percent, based on portion of expense not attributable to work in process)

Account 5951—Manufacturing Method Laboratory

Account 5961—Illinois Sales Tax

Account 5981—Christmas Checks (exclude on basis of same proportion by which recipients' basic compensation is excluded from inventory)

The petitioner did not dispute the section 481 adjustment proposed in the deficiency notice. However, since we have not wholly accepted the respondent's determination, certain modifications of the section 481 adjustment will be necessary. We assume that the parties will be able to agree on appropriate modifications in the Rule 50 computation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

QUEALY, *J.*, did not participate in the consideration and disposition of this case.