John T. O'Dea, Jr., Commissioner.
O'Dea v. Commissioner
Docket No. 3641-68.
United States Tax Court
T.C. Memo 1971-138; 1971 Tax Ct. Memo LEXIS 193; 30 T.C.M. (CCH) 593; T.C.M. (RIA) 71138; June 15, 1971, Filed *193 In 1963 and 1965, the petitioner, a cash method taxpayer, computed gross business receipts for tax purposes on the basis of deposits to his business checking account. In 1964, he computed his gross business receipts on the basis of certain invoices to his customers dated in that year. The respondent reconstructed the petitioner's income for 1964 on the basis of certain bank deposits. Held, the petitioner has failed to prove that the method of computing gross receipts used by the respondent for 1964 did not clearly reflect his income. Robert B. Milgroom, 225 Franklin, Boston, Mass., and George A. Stella, for the petitioner. Robert B. Dugan, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined deficiencies in the income tax of the petitioner of $19,371.03 for 1964 and $8,462.41 for 1965 and additions to tax for negligence under section 6653(a) of the Internal Revenue Code of 1954[1] of $968.55 for 1964 and $423.12 for 1965. The issues for decision are (1) whether the respondent's use of the bank deposit method to reconstruct the petitioner's gross receipts for 1964 was proper under the circumstances; and (2) whether any part of the underpayment of tax in 1964 and 1965 was due to negligence. Findings of Fact The petitioner, John T. O'Dea, Jr., resided in Wayland, Massachusetts, at the time of filing the *195 petition in this case. He filed his 1964 and 1965 Federal income tax returns with the district director of internal revenue, Boston, Massachusetts. He used the cash receipts and disbursements method of accounting and filed his returns for those years on a calendar year basis. At all relevant times, the petitioner was engaged in the business of selling mattresses and related products, doing business as the Deaco Manufacturing Company (Deaco). Deaco was not actively engaged in manufacturing, and the petitioner did not maintain an inventory or handle any merchandise that he sold. He did business with certain institutions operated by the Commonwealth of Massachusetts. To conduct his business, the petitioner submitted his bid to an institution. If his bid was accepted, he ordered the goods from a manufacturer, who shipped such goods directly to the purchaser. The petitioner billed the purchaser on a multi-part 594 form provided by Massachusetts, including a purchase order, invoice, and remittance form. In return, he received the amount of the purchase price from either the purchasing institution or the Commonwealth of Massachusetts and deposited such amount to his account. Thereafter, *196 he retained his commission and paid the manufacturer for the goods shipped to the purchaser. It was the petitioner's practice never to pay the manufacturer before he received payment from the purchaser. All collections made by him were for merchandise actually received by the purchaser. It was also the petitioner's practice to deposit his business receipts within a day after receiving them. Internal Revenue Service agent Thomas J. McGagh was assigned to examine the petitioner's Federal income tax returns for 1963, 1964, and 1965, and pursuant to such assignment, on or about August 5, 1965, contacted the petitioner and asked him to produce records to substantiate the information contained in such tax returns. At the first interview conducted by agent McGagh, both the petitioner and his accountant were present and provided Mr. McGagh with numerous records pertaining to the 1963 return. However, bank statements for 1963 were not included in such records, and the petitioner and his accountant were advised that additional information would be required in order to substantiate the gross receipts reported on schedule C of such return. As agent McGagh proceeded with his examination, he *197 discussed with the petitioner and his accountant the method used to compute the petitioner's gross receipts for 1963, 1964, and 1965. He was advised that for 1963 the cash method of accounting was used, and that the petitioner's gross receipts for 1963 were computed on the basis of the deposits in his business checking account. However, with respect to the petitioner's gross receipts for 1964, agent McGagh was advised that such receipts were computed on the basis of certain sales invoices supplied to his accountant by the petitioner. The total of the amounts shown on such invoices was reported as gross receipts on schedule C of the petitioner's 1964 return. With respect to the computation of gross receipts as shown on the petitioner's 1965 return, agent McGagh was advised that the petitioner's accountant had used the bank deposit method to compute such gross receipts. Mr. McGagh found that the use of the invoices to compute gross receipts in 1964 was improper and requested that the petitioner's accountant provide him copies of the petitioner's bank statements and deposit tickets for 1964. By use of such bank statements and deposit tickets, Mr. McGagh recomputed the petitioner's gross *198 receipts for 1964. As a result of such recomputation, agent McGagh found that an amount of $11,205, which the petitioner received from Taunton State Hospital, was included in the petitioner's gross receipts for 1963, but not for 1964, although such amount was deposited in 1964; thus, the agent allocated such sum to the petitioner's 1964 income and reduced his 1963 income accordingly. Agent McGagh also found that there were 11 other items which constituted cash receipts received in 1964 by Deaco from various institutions in Massachusetts, but which had been omitted from the petitioner's 1964 income. He also established that three items were recorded as income in both 1964 and 1965 but were properly includable in gross receipts in 1965, because copies of deposit tickets indicated that such items were deposited in his bank account in 1965. Two items which were included in the petitioner's 1964 income on the basis of invoices dated 1964 were eliminated from income because it could not be established by means of bank statements or bank deposit tickets that such items were received in 1964 or in any other year. In one case, agent McGagh found that the petitioner claimed a deduction for an *199 amount of $400 which was actually a deposit to his account. He also found that an amount of $360 was business income when he received no explanation from the petitioner or his accountant as to its source. As a result of the adjustments made pursuant to his examination, Mr. McGagh concluded that the petitioner's gross receipts for 1964 should be increased by $55,689.45. With respect to 1965, agent McGagh concluded that, in the absence of any explanation to the contrary, an amount of $1,875.65 which was discovered in a personal bank account of the petitioner was income in that year. He also found that $17,817.60 which was deposited in 1965 by the petitioner in the Suburban Bank of Arlington, Massachusetts, was business income which was not included in his gross income for that year. As a result of his findings, agent McGagh increased the 595 petitioner's gross receipts for 1965 by $19,693.25. Mr. McGagh computed the cost of goods sold by reference to the worksheets submitted by the petitioner's accountant. The petitioner computed the cost of goods sold in 1963, 1964, and 1965 on the basis of disbursements from his business checking account. Such disbursements were shown on the *200 worksheets by listing the checks in numerical sequence. No omissions were found in such numerical sequence between January 1, 1964, and December 31, 1964, and none of the checks listed for 1964 had duplicate numbers. Neither the petitioner nor his accountant presented Mr. McGagh with any additional evidence of the costs of goods sold for 1964 or 1965. Agent McGagh accepted the petitioner's computation of the cost of goods sold in 1964 and 1965, except that he excluded certain expenditures on the basis that they were spent for personal purposes. In his statutory notice of deficiency, the respondent determined an overassessment in 1963 and deficiencies in 1964 and 1965. In 1964 and 1965, the respondent determined that the petitioner understated gross income and disallowed certain amounts claimed as costs of goods sold, certain amounts claimed as deductions for business expenses, contributions, a medical expense deduction for 1965, and a $600 exemption claimed in each year for the petitioner's son; other minor adjustments were made for both years. Opinion We have no jurisdiction to consider the overassessment for 1963. Paccon, Inc., 45 T.C. 392 (1966); Loyd L. Parker, 37 T.C. 331 (1961). *201 The petitioner apparently conceded at trial the correctness of a portion of the respondent's determination for 1965, and has contested no part of it; therefore, such determination must be sustained. Welch v. Helvering, 290 U.S. 111 (1933); Rule 32, Tax Court Rules of Practice.Similarly, the petitioner has not contested amounts disallowed by the respondent which the petitioner claimed in 1964 as costs of goods sold, other business deductions, contributions, and as an exemption for his son; and therefore, such adjustments must also be sustained. Welch v. Helvering, supra.The remaining issues for decision are (1) whether the respondent was justified in his use of the bank deposit method to reconstruct the petitioner's gross receipts for 1964; and (2) whether the deficiency in either year in issue was due in part to the negligence of the petitioner. Section 446(a) provides that taxable income is to be computed by using the method of accounting which the taxpayer regularly uses to compute his income in keeping his books. Sec. 1.446-1(a)(1), Income Tax Regs. Ordinarily, under the cash receipts and disbursements method, all items constituting gross income are *202 to be included in gross income for the taxable year in which they are actually or constructively received. Sec. 1.451-2, Income Tax Regs.; Lavery v. Commissioner, 158 F. 2d 859 (C.A. 7, 1946), affg. [Dec. 14,882] 5 T.C. 1283 (1945). Similarly, expenditures are deducted in the year in which they are actually made. Sec. 1.446-1(c)(1)(i), Income Tax Regs. If no method of accounting has been regularly used by the taxpayer, or if the method does not clearly reflect income, the respondent is authorized by statute to compute taxable income in a manner which, in his opinion, does clearly reflect income. Sec. 446(b); sec. 1.446-1(a)(2), Income Tax Regs. The petitioner has the burden of showing that the method used by the respondent does not clearly reflect income. All- Steel Equipment Inc., 54 T.C. 1749 (1970); McAnelly Hardware Co., 9 B.T.A. 361 (1927). The petitioner contends that his tax returns and records were adequate to reflect the correct taxable income in the correct taxable year, and that his method of reporting matched his expenses against corresponding income so that each year contained each year's income and expenses. He further *203 contends that the respondent's use of bank deposits to compute the petitioner's 1964 gross receipts effected a change in his method of accounting and placed the burden of proof as to this issue on the respondent. On the other hand, the respondent contends that no change in the petitioner's method of accounting was made, that it was proper for the petitioner to use the cash receipts and disbursements method of accounting, and that the use of an improper method of computing his gross receipts in 1964 caused a distortion of income in both 1964 and 1965; thus, the accounting method used by the petitioner in 1964 did not clearly reflect his income. The evidence in this case does not support the petitioner's contention that the respondent in recomputing his 1964 gross receipts by means of bank deposits changed his 596 method of accounting. On the contrary, it is clear that the cash method was the proper method of accounting for the petitioner, and that if there was any change by such method with respect to 1964, it was initiated by the petitioner himself, not the respondent. In 1963 and 1965, the petitioner prepared his returns using the cash method. He computed his gross receipts *204 for 1963 and 1965 on the basis of deposits to his business checking account. In 1963, 1964, and 1965, he computed his cost of goods sold on the basis of disbursements from such account. Only in 1964 and then only with respect to the computation of gross receipts did the petitioner vary the method of accounting he regularly used in such years. In 1964, the petitioner's gross receipts were computed on the basis of certain invoices dated 1964. By the change in the method of computing gross receipts for 1964, the petitioner could and did fail to report for any year the amounts represented by invoices dated 1963 and deposited in 1964. As a result of the change back to the use of the bank deposit method for 1965, amounts represented by invoices dated 1964 but not received until 1965 were included in income for both years. Under these circumstances, it is clear that the petitioner failed to use an appropriate accounting method consistently, that the method used by the petitioner failed to reflect his income clearly, and that therefore the respondent was authorized to recompute the petitioner's income in the method used by the respondent. The respondent determined that the use of invoices *205 to compute gross receipts in 1964 resulted in the omission of items totaling $55,689.45 from gross receipts in 1964, and the duplication of certain items in gross receipts in 1964 and 1965. The petitioner has not disputed the amount of the items determined by the respondent to be income to him in 1964, that they were business receipts, or that they were deposited to his account in 1964; and he has not shown that such amounts were properly includable in his gross receipts for any other year. He has presented evidence with respect to only one of such items in the amount of $11,205, which was received by him from the Taunton State Hospital. Such amount was reported as income in 1963, and the petitioner testified that this was correctly so because, according to a certain invoice, he received it in that year. However, such invoice is inadequate to prove that the sum stated thereon was actually paid or to prove when any payment was made. To the contrary, nowhere on such invoice is there reference to any check drawn or sent to the petitioner, or to any payment actually accompanying such invoice. The petitioner contends that he received payment on November 13, 1963, the date of the invoice, *206 but it appears from information printed on the invoice that the preparer of such invoice was to be the vendor so that the date November 13, 1963, may have been placed thereon by the petitioner and not by the puchaser. In addition, on the back of the invoice there is stamped "Received Bureau of Building Construction Dec 16 1963," and the stated terms of payment were "Net 30 days." The petitioner testified that it was his practice to make deposits of business receipts within a day after receiving them, and that he would not have delayed depositing the amount in issue from November 13, 1963, to January 1964. Other than the invoice, he produced no documentary proof that he received such amount in 1963. Finally, at the time of his initial examination, the respondent's agent was provided with a copy of a bank deposit slip dated "received" January 6, 1964, which showed that there was a deposit to the petitioner's business account in the amount of $11,205 on or about that date. Therefore, the petitioner has failed to prove that he received such amount in 1963. Lavery v. Commissioner, supra. The petitioner argues that although the respondent increased gross receipts from sales, *207 the respondent did not allow him a corresponding increase in cost of goods sold. However, in each year the petitioner computed such costs on the basis of disbursements from his business checking account, and there is no evidence that he paid any of such costs either by cash or certified check. Moreover, the petitioner presented cancelled checks to substantiate such costs, and with the exception of certain minor amounts, the respondent allowed all such costs as reported on his returns. If there were additional costs of goods sold, it was the petitioner's burden to prove them, and he has made no attempt to do so. Furthermore, he has not connected the costs of goods sold which he was allowed with any particular item of income, and it is possible that the costs attributable to the amounts omitted from gross receipts were deducted in 1964 or in another year. Thus, it appears that the respondent has allowed all costs of goods properly established by the petitioner. 597 The respondent determined that for 1964 and 1965 the petitioner was liable for the penalty under section 6653(a). Under such section, a taxpayer is liable if any part of the underpayment of tax is due to negligence. *208 James W. England, Jr., 34 T.C. 617 (1960). The burden is on the petitioner to show that he was not negligent. David Courtney, 28 T.C. 658 (1957). In the instant case, we must uphold the respondent's determination. In each of the years in issue, the petitioner, an experienced businessman, substantially understated his gross income, and he also substantially overstated his business deductions. John Harper, 54 T.C. 1121 (1970). He has offered no evidence to prove that such understatement was due to a bona fide mistake of law or that he was not negligent with respect to the overstatement of his business deductions in each year. See Vern W. Bailey, 21 T.C. 678, 687 (1954). In summary, we hold that the petitioner has utterly failed to prove that the respondent's use of the bank deposit method to reconstruct his gross receipts for 1964 did not clearly reflect his income for that year, and that the petitioner has also failed to prove that part of the underpayment of tax in each year in issue was not due to his negligence. Accordingly, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩