ALICE R. AVERY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Avery v. Commissioner
Docket No. 796-74.
United States Tax Court
T.C. Memo 1976-129; 1976 Tax Ct. Memo LEXIS 279; 35 T.C.M. (CCH) 577; T.C.M. (RIA) 760129; April 22, 1976, Filed Robert E. Kovacevich, for the petitioner. Thomas N. Tomashek, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a deficiency in petitioner's 1972 Federal income tax of $11,845.97. Respondent also asserted a penalty of $1,128.36 under section 6651(a) [1] for late filing of a return, and a penalty of $592.30 under section 6653(a) for negligent underpayment of tax. *280 The following issues are presented for decision: (1) Whether petitioner had unreported income in 1972 from the sale of heroin; (2) Whether the late filing of petitioner's return was due to reasonable cause; and (3) Whether the underpayment of tax was due to negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner filed an income tax return for 1972 as an unmarried head of household. [2] At the time petitioner filed her petition, she resided in Pasco, Washington. During 1972 petitioner worked as a secretary for Atlantic Richfield Hanford Company at an annual salary of $9,082.92. Petitioner reported this salary, together with a small amount of interest income, as her total income on her 1972 return. Petitioner did not file her 1972 return with respondent until May 29, 1973. A certain Alfred Bell ("Bell") lived with petitioner during part of 1972. In September 1972 Bell was convicted of failing to file income tax returns. As a result, he was incarcerated in Federal prison from September to December *281 of 1972. In June 1973 he was convicted of unlawful distribution of heroin in violation of 21 U.S.C. section 841(a) (1). Petitioner was convicted of the same offense in July 1973. During 1972 a special agent of the Drug Enforcement Administration of the Department of Justice, Silas Brandon ("Brandon"), began to investigate petitioner. Late on the evening of October 24, 1972, while at petitioner's mother's home, Brandon purchased an ounce of heroin from petitioner for $1,000 cash. After the sale, petitioner commented that she hoped that she would be seeing Brandon often. Two days later Brandon went directly to petitioner's home and purchased two ounces of heroin from her for $2,000 cash. Brandon made a third purchase from petitioner, one ounce for $1,000 cash, on November 13, 1972. On two subsequent occasions in January 1973, Brandon also went to petitioner's home. On these visits, however, he purchased heroin from Bell. During 1972 petitioner purchased the following items: 1. A 19-foot 1972 Bayliner boat and a 1972 boat trailer, for a combined price of $5,092.50 cash. 2. A 1973 Cadillac Fleetwood Brougham (total price $12,189.72) in exchange *282 for a used automobile and $8,739 cash. 3. A 1972 Javelin automobile (total price $4,200) on which she made a $2,000 cash downpayment 4. A diamond ring and wedding band (total price $976.50) on which she paid $250. In addition, in February 1973, petitioner purchased a 1973 El Dorado motor home (total price $10,683) on which she made a cash down payment of $2,350. On the basis of Brandon's investigation, together with other information, respondent concluded that petitioner had sold heroin during three months in 1972 but had failed to report this income. Respondent in the statutory notice calculated this unreported income in the following manner: [3] He first determined that petitioner had made sixty heroin transactions in a three month period in 1972, that each transaction involved the sale of one ounce of heroin at a sales price of $1,000 per ounce, and that the revenue from these transactions thus totaled $60,000. Respondent next deducted from the sales revenue figure the cost of the heroin sold. Respondent determined that the cost of the heroin when purchased by petitioner was $400 per ounce; that each ounce of raw heroin was then diluted to yield approximately three *283 ounces of the type of heroin which was customarily sold to retail customers, and thus petitioner needed eighteen ounces of raw heroin to yield the sixty ounces of street heroin which she had sold; that the cost of these eighteen ounces, at $400 per ounce, was $7,200. Thus sales revenue ($60,000) reduced by the cost of the heroin purchased ($7,200) left a net profit of $52,800. Respondent allowed no other expenses to petitioner in calculating the amount of her unreported income. Respondent determined that this $52,800 of unreported income, after allowing for income averaging, personal exemptions, and the standard deduction, resulted in a tax deficiency of $11,845.97. OPINION 1. Unreported Income From The Sale Of Heroin.
Petitioner first argues that respondent's determination was arbitrary and unreasonable, and therefore no presumption of correctness attaches to it. The burden is on petitioner to show that respondent's determination is arbitrary and unreasonable *284 ( Helvering v. Taylor,293 U.S. 507 (1935); Harold E. Harbin,40 T.C. 373, 376 (1963)), and petitioner has not sustained that burden. The revenue agent testified that he relied upon information about petitioner's sales of heroin supplied him by a narcotics dealer in the Pasco area, and additional information supplied by Special Agent Brandon of the Drug Enforcement Administration of the Department of Justice and by the narcotics detail of the Pasco Police Department. The determination that petitioner sold 20 ounces of heroin a month for three months in 1972 at a price of $1,000 an ounce, and that she paid $7,200 for the heroin that she sold, was reasonable under the circumstances. See United States v. Brown, an unreported case ( D. Ohio 1975, 37 AFTR 2d 76-579, 76-1 USTC par. 9162); cf. Rinieri v. Scanlon,254 F. Supp. 469 (S.D. N.Y. 1966). The statutory notice is presumptively correct. Having made that determination, we are left with the question of what effect that presumption has in our case. "The presumption in favor of the Commissioner is a procedural device which requires the taxpayer to *285 come forward with enough evidence to support a finding contrary to the Commissioner's determination." Rockwell v. Commissioner,512 F. 2d 882, 885 (9th Cir. 1975), affg. a Memorandum Opinion of this Court, cert. denied U.S. (Dec. 8, 1975). Petitioner claims she submitted evidence which overcomes this presumption. She further claims that her evidence establishes that she did not own the heroin she sold to Special Agent Brandon (who was posing as a narcotics purchaser), but was instead acting as an agent for her boyfriend, Albert Bell, who was then in prison. Petitioner called as witnesses herself, Bell and Brandon. Petitioner testified that Bell told her she should dig up from the backyard of her house six packages of heroin, totaling three ounces, and sell them to a Ben Coleman for $1,000 per ounce. She said she received $3,000 from Brandon for that heroin and put the money in an envelope in a drawer to deliver to Bell when he got out of prison. She testified that Bell frequently gave her money (always cash) and that it was with Bell's money that she purchased the 1973 Cadillac and the 1972 Bayliner boat. According to petitioner and also Bell, *286 Bell's aunt left Bell around $8,500 when she died, and Bell gave that money to petitioner. However, a special agent of the Revenue Service's Intelligence Division, who interviewed petitioner following her arrest on heroin charges, testified that petitioner told him she did not get money from Bell to purchase the Cadillac. And Lucille Smith, a welfare eligibility supervisor in Pasco, testified that Bell's aunt received welfare for 25 years prior to her death in 1972. Alfred Bell testified that he told petitioner to get the heroin (which was given to Brandon) and deliver it to Coleman. He said he gave petitioner the money to buy an automobile and in addition the $8,500 his aunt left him. Bell said that he not only gave petitioner cash, but that he also gave her checks and paid her bills for her. Bell also testified that the money petitioner handed over to him which she got from Brandon was mostly twenty dollar bills, with some fives and tens. Brandon, however, testified he gave petitioner all $100 bills for the heroin. Brandon also testified that he gave petitioner $4,000 for four ounces of heroin, instead of $3,000 for three ounces as petitioner testified. We found the *287 testimony of petitioner and Bell to be completely lacking in credibility and to possess no indicia of trustworthiness. We consider their past convictions for narcotics offenses to be serious counterweights to their claims of truthfulness. We further found their testimony to be evasive, internally contradictory, contradicted by their own prior statements, and contradicted by the testimony of others. Their demeanor and bearing suggested conscious efforts at misstatement. On the contrary, we found the testimony of Special Agent Brandon to be clear, consistent and credible. Petitioner does not and cannot dispute the authority of this court to determine the credibility of witnesses. Quock Ting v. United States,140 U.S. 417, 420-421 (1891); Wood v. Commissioner,338 F. 2d 602, 605 (9th Cir. 1964); Pinder v. United States,330 F. 2d 119 (5th Cir. 1964); Commissioner v. Smith,285 F. 2d 91 (5th Cir. 1960); Factor v. Commissioner,281 F. 2d 100 (9th Cir. 1960); cf. W. L. Kann,18 T.C. 1032, 1044 (1952), affd. 210 F. 2d 247 (3rd Cir. 1953), cert. denied *288 347 U.S. 967 (1954). Petitioner has simply not introduced credible evidence to support her claim that she did not own any heroin and that she was only a selling agent for Bell. We conclude that petitioner has presented insufficient evidence to rebut the presumption in favor of the correctness of the statutory notice. Cf. Potts, Davis & Co. v. Commissioner,431 F. 2d 1222 (9th Cir. 1970), affg. a Memorandum Opinion of this Court. Petitioner also argues that, assuming she was the owner, respondent erred in the amount of income he attributed to her from heroin sales. Again, respondent's determination is presumptively correct, and petitioner bears the burden of going forward with the evidence so as to rebut the presumption. We find that petitioner has submitted no credible evidence concerning the amount of unreported income. 2. Late Filing Of Petitioner's Return.
Petitioner further asserts that respondent erred in determining that petitioner is liable for an addition to tax of ten percent under section 6651(a) for failure to file her return within the time prescribed in section 6072. That return should have been filed by April 15, 1973, but *289 was not filed until May 29, 1973. Section 6651(a)(1) provides that petitioner is liable unless she shows that the late filing was due to reasonable cause. Petitioner argues that taking care of her children, preparing for her trial on a narcotics charge, and trying to retain her job together constitute reasonable cause. The burden is upon petitioner to show that respondent erred in his determination, Conlorez Corp.,51 T.C. 467, 473-474 (1968), and we are not convinced on this record that her delay was due to reasonable cause. We hold that respondent did not err in determining that she was liable for a ten percent addition to tax under section 6651(a)(1). 3. Underpayment Of Tax.
The remaining question is whether respondent erred in determining that petitioner is also liable for an addition to tax of five percent under section 6653(a). Section 6653(a) provides for such an addition to tax if petitioner's underpayment is due to negligence or intentional disregard of rules and regulations. The burden lies with petitioner to show that respondent erred. Mark Bixby,58 T.C. 757, 791 (1972). Petitioner has failed to submit any credible evidence *290 from which we could infer that respondent erred in his determination of negligence. We also consider the size of the gap between unreported and reported income as strongly suggestive of negligence or willful disregard of rules and regulations. John T. O'Dea, Jr.,30 T.C.M. 593, 40 P-H Memo. T.C. par. 71,138 (1971); cf. John Harper,54 T.C. 1121, 1139 (1970). Therefore we hold that petitioner is liable for a five percent addition to tax under section 6653(a). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. Petitioner is the mother of four minor children who live with her.↩
3. The revenue agent who prepared the statutory notice based his calculations on information obtained from Brandon, from a narcotics dealer who operated in the Pasco area, and from the Pasco Police Department.↩