**Burt K. TODD and Frances Hays Todd, Plaintiffs**

**v.**

**UNITED STATES of America, Defendant.**

Civ. A. No. 84–251.

United States District Court, W.D. Pennsylvania.

May 29, 1985.

William J. Smith, Lawrence E. Flatley, Reed Smith Shaw & McClay, Pittsburgh, Pa., for plaintiffs.

Thomas A. Daley, Judith Giltenboth, Asst. U.S. Attys., Pittsburgh, Pa., Gregory S. Hrebiniak, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

TEITELBAUM, Chief Judge.

### I.

Plaintiffs brought this action under the Internal Revenue Code of 1954, as amended, 26 U.S.C. §§ 1 *et seq.*, seeking to recover federal income taxes and interest thereon, which plaintiffs contend was erroneously and illegally assessed and collected by the Internal Revenue Service (IRS).

A nonjury trial on this matter was conducted on January 14–15, 1985.

Judgment in this action will be entered for defendant and against plaintiffs for reasons set forth below.

### II.

Plaintiff Burt K. Todd is the owner of a parcel of approximately 104 acres of land that is located in Ligonier Township, Westmoreland County, Pennsylvania. The property in question was at all relevant times used as an undivided country estate.

Burt K. Todd obtained the property on December 12, 1956 by conveyance from R.K. Mellon and Constance Prosser Mellon (later, Constance Prosser Mellon Burrell), his wife.

The deed conveying the property to Burt K. Todd contained the following covenants:

A. The party of the second part [Burt K. Todd] agrees not to subdivide any portion of the above described property, and further agrees not to lease any portion of said property to anyone except members of his immediate family; namely, his own children.

B. The party of the second part [Burt K. Todd] agrees not to sell the above described property or any portion thereof without giving to Richard K. Mellon and Sara Mellon Scaife the first refusal to purchase the same.

C. The party of the second part [Burt K. Todd] agrees that the Rolling Rock Hunt shall have the right and privilege to hunt for foxes over the above described premises with horses and hounds and agrees that the members or guests of members of Rolling Rock Club shall have the right to fish, hunt and shoot and to remove from said premises any fish or game thereon reduced and all such uses and purposes. The party of the second party [Burt K. Todd] is prohibited from erecting wire fences or other obstructions, as a protection for horses and hounds.

On December 30, 1979, Burt K. Todd granted to the Western Pennsylvania Conservancy a scenic easement in gross upon the property in perpetuity, without expectation of economic benefit. The Conservancy is an organization described in 26 U.S.C. § 170(c) of the Internal Revenue Code.

The easement that Burt K. Todd granted to the Conservancy was an easement with respect to real property in perpetuity, exclusively for conservation purposes, without the exception set forth in 26 U.S.C., Section 170(f)(3)(B)(iii) (1979).

The Grant of Easement executed that day contained the following provision:

And in furtherance of the foregoing affirmative rights, and intending to be legally bound hereby the Grantor declares and imposes the following covenants, on behalf of himself, his heirs and assigns, which covenants shall run with and bind the Protected Property in perpetuity:

1. There shall be no subdivision of the property, except Grantor, his heirs and assigns retain the right to subdivide the property into not more than five parcels.

On December 30, 1979, Constance Prosser Mellon Burrell, a grantor of the above Mellon deed dated December 12, 1956, granted to the Conservancy her interest in the restrictive covenants contained in the Mellon deed.

R.K. Mellon and Sarah Mellon Scaife had died prior to December 30, 1979. Constance Prosser Mellon Burrell died on November 12, 1980.

Plaintiffs claimed on their 1979 Federal income tax return (Form 1040) a charitable contribution deduction of $353,000 for the scenic easement granted to the Conservancy. Plaintiffs were unable to utilize the full amount of the charitable contribution deduction in 1979 and, as a consequence, there was a carryover of an unused charitable contribution of $181,349, $159,504 of wich was used for the tax year ending December 31, 1980.

The IRS subsequently sent plaintiffs a notice of proposed deficiency in tax for the years 1979 and 1980, including an examination report which proposed to value the charitable contribution of the scenic easement to the Conservancy at only $31,000.

Plaintiffs timely filed a protest to the proposed 1979 and 1980 deficiencies, including a protest to the IRS' proposed valuation of the charitable contribution of the scenic easement.

The IRS subsequently issued statutory Notice of Deficiency letters, which notified plaintiffs that the IRS was assessing a deficiency for the tax year ended December 31, 1979 in the amount of $71,456 and a deficiency for the tax year ended December 31, 1980 in the amount of $81,266.00.

Plaintiffs then paid the deficiency assessed by the IRS for 1979, plus $32,509.06 in interest. They also paid the deficiency assessed for 1980, plus $26,844.07 in interest.

Plaintiffs subsequently made claims for refund of the above tax deficiencies that had been assessed and collected and for refund of the interest they had paid by filing Amended Tax Returns for 1979 and 1980.

The IRS took no action with respect to those claims, whereupon plaintiffs initiated the present action.

## III.

■ Tax determinations by the Commissioner of IRS are presumptively correct. If the taxpayer presents competent and relevant evidence in a tax refund action that the Commissioner's determination was incorrect, that presumption is overcome and the burden of going forward then shifts to the Commissioner. The ultimate burden of persuasion remains upon the taxpayer at all times, however. *See Sullivan v. U.S.*, 618 F.2d 1001, 1008–1009 (3d Cir. 1980).

■ The ultimate issue in a tax refund action is not whether the assessment of the Commissioner was incorrect but, rather, whether the amount paid exceeded the amount actually due. *See Higginbotham v. U.S.*, 556 F.2d 1173, 1175 (4th Cir.1977).

■ The presumption of correctness which attaches to a deficiency notice issued by the Commissioner places upon the taxpayer the burden of establishing *all* matters necessary to show that the taxpayer does not owe the taxes in question. *See Southwestern Life Ins. Co. v. U.S.*, 560 F.2d 627, 635 (5th Cir.1977).

A tax refund action is similar to an action for money had and received. The burden is always upon the taxpayer to show the amount wrongfully withheld by the Government. *See Ehlers v. Vinal*, 382 F.2d 58, 66 (8th Cir.1967).

The taxpayer bears the dual burden: 1) of proving *that* the Commissioner erred in determining the amount of tax liability; and 2) of proving *what* the correct amount of tax liability is. *See Crosby v. U.S.*, 496 F.2d 1384, 1390 (5th Cir.1974).

■ The taxpayer must produce credible evidence from which a proper calculation can be made before he is entitled to a refund. *See Bangor Punta Operations v. U.S.*, 466 F.2d 930, 935 (7th Cir.1972). If insufficient evidence is presented from which the correct amount of tax liability can be calculated, the determination of the Commissioner must be upheld. *See Crosby v. U.S.*, 496 F.2d at 1390.

## IV.

■ The determination by the Commissioner of the amount deductible for the grant of the scenic easement to the Conservancy was correct.

The amount of charitable deduction plaintiffs may take for the grant of the scenic easement is the *difference* between the fair market value of the property, based on its "highest and best use", *before* and *after* the grant of the easement.

"Highest and best use" is defined as:

A reasonable and probable use that supports the highest present value as defined as of the effective date of appraisal.

Alternatively, that use from among reasonably probable and legal alternative uses found to be physically possible, appropriately supported, financially feasible, and which results in highest land value.

Real Estate Appraisal Terminology, (Rev. Ed.), pp. 126–27.

Mr. John Welsch, expert real estate appraiser for the Government, testified that the difference in fair market value as a result of the grant of the scenic easement was $20,800.

According to Mr. Welsch, the total pre-easement value of the property was $875,000. The land was evaluated at $4,000 per acre, for a total of $416,000 and the improvements at $459,000. The total post-easement value of the property was $854,000. The land was evaluated at $3,800 per acre and the improvements at $459,000.

Mr. Welsch's appraisal was based on the determination that the "highest and best use" of the property, both before and after grant of the easement, was as an undivided country estate or "residential gentleman farm." He did not consider the "highest and best use" of the property as a site for possible subdivision. Had he done so, he admitted, the per-acre values of the land would have been greater.

Mr. Welsch's determination of "highest and best use" was predicated upon the

assumption that the three covenants in the Mellon deed of December 12, 1956 were valid and enforceable. He made no attempt to determine the value of the property in the event that the covenants were invalid.

The assumption that the three covenants were enforceable was incorrect.

■ The first covenant prohibiting subdivision constituted a restriction on alienation and, as such, was not enforceable under Pennsylvania law. *See Grossman v. Hill,* 384 Pa. 590, 122 A.2d 69 (1956).

■ The second covenant giving R.K. Mellon and Sarah Mellon Scaife the right of first refusal in the event Burt Todd sold the property was *personal* to R.K. Mellon and Sarah Mellon Scaife. *See DeSanno v. Earle,* 273 Pa. 265, 117 A. 200 (1922). As such, the covenant terminated upon their deaths. Both R.K. Mellon and Sarah Mellon Scaife died prior to December 30, 1979, the date of the grant of the scenic easement.

■ The third covenant granting the Rolling Rock Hunt the right to hunt foxes on the property also had terminated prior to December 30, 1979. Rolling Rock Hunt had ceased to exist as an independent entity when it merged with the Westmoreland Hunt to become the Rolling Rock-Westmoreland Hunt.

■ The fact that this assumption was erroneous does not, however, mean that Mr. Welsch's determination of the "highest and best use" of the property was mistaken. As was indicated previously, the *legal* use of property is but *one* factor to be considered. Another factor—in this case the critical factor—is the *probable* use of the property.

■ Considering that the area around the Todd property consists of estate-type property, that there existed a strong demand for such estate-type property in 1979–80, that the residents of the area historically have been opposed to development, and that at most three subdivisions exist in all of Ligonier Township, it must be concluded that Mr. Welsch was correct in

determining that the "highest and best use" of the Todd property, *both before and after the grant of the easement,* was as a country estate, and not as property suitable for subdivision.

V.

Plaintiffs' position concerning the correct amount of the charitable deduction for the grant of the scenic easement is untenable.

According to plaintiffs, the diminution in value of their property as a result of the scenic easement was a staggering 40%.

Mr. Ray Barone, expert real estate appraiser for plaintiffs, testified that the total pre-easement value of the property was $875,000. The land was evaluated at $4,000 per acre, for a total of $416,000, and the improvements at $459,000. He testified that the total post-easement value of the property was $522,000. The land was evaluated at $158,000, and the improvements at $364,000.

Mr. Barone assumed that the "highest and best" pre-easement use of the property was as a residential subdivision of ten tracts of approximately ten acres each. He further assumed that the "highest and best" post-easement use of the property was as a subdivision consisting of four two-acre parcels, upon each of which was placed a residential dwelling, and of a fifth parcel consisting of ten acres, upon which the existing buildings would be located, plus eighty-six acres of agricultural land.

Mr. Barone estimated each of the four-acre plots to be worth $4,000 per acre, the ten-acre plot to be worth $4,000 per acre, and the value of the eighty-six agricultural acres to be worth $1,000 per acre. He further estimated that the value of the main house had decreased by 15%.

■ The assumption that the "highest and best use" of the Todd property is as a residential subdivision is erroneous. As was indicated previously, the "highest and best use" of the Todd property is as an undivided country estate. Plaintiffs' determination of the pre- and post-easement values of the Todd property are therefore unreliable. This in turn renders the difference between those values unreliable.

Even if it be assumed that the "highest and best use" of the Todd property was as a residential subdivision, the post-easement evaluation is nonetheless untenable. There is no persuasive justification given either for attaching as much as eighty-six acres to the ten-acre parcel on which the existing buildings stand or for valuing those eighty-six acres at a mere $1,000 per acre. This would mean that this particular ninety-six acre parcel of land located in exclusive Ligonier Township would have a fair market value of only $126,000. Such a result flies in the face of facts and is wholly implausible.

Judgment therefore will be entered for defendant and against plaintiffs because the defendant's determination as to the allowable charitable deduction is correct, and because defendant's determination is incorrect.

The foregoing constitute findings of fact and conclusions of law pursuant to Fed.R. Civ.P. 52(a).

An appropriate order shall issue.

### ORDER

AND NOW, May 29, 1985, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED that judgment is entered for defendant and against plaintiffs.